635 A.2d 977

Patricia FIKAR

v.

**MONTGOMERY COUNTY, Maryland.**

No. 64, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 19, 1994.

Kenneth M. Berman (Jodi H. Blecker, Berman, Sobin & Gross, all on brief), Gaithersburg, for appellant.

Charles L. Frederick, Asst. Co. Atty. (Joyce R. Stern, Co. Atty., Joann Robertson, Sr. Asst. Co. Atty., all on brief), Rockville, for appellee.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired), Specially Assigned.

KARWACKI, Judge.

We are asked in this case to determine whether a statutory offset between workers' compensation benefits and a county-sponsored disability retirement plan applies when the workers' compensation benefits are paid for vocational rehabilitation. We shall hold that it does.

I

On August 15, 1989, Patricia Fikar, a 27-year-old correctional officer for the Montgomery County Department of Corrections, was injured in an accident which occurred in the

---

* McAULIFFE, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

course of her employment. She sustained lower back injuries which prevented her from returning to work as a correctional officer. Fikar filed a claim with the Workers' Compensation Commission and received workers' compensation benefits in the form of temporary total disability benefits from August 15, 1989 through March, 1991. Beginning in March, 1991, Fikar began receiving vocational rehabilitation benefits pursuant to Maryland Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 101, § 36(8).[1]

Because she was unable to return to her previous employment as a result of the accident, Fikar obtained a service-connected disability retirement from the County.[2] She began collecting pension benefits on August 2, 1991, pursuant to the Montgomery County Code (1984, as amended), § 33–43. Under § 33–43(h)(1) of the County Code, Fikar receives a pension in the amount of two-thirds of her final earnings as a correctional officer.

---

1. In 1991, the Workers' Compensation Act was recodified as Maryland Code (1991 Repl.Vol.), Title 9 of the Labor and Employment Article. Because Fikar's accident occurred in 1989, the provisions of Md.Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 101 are applicable to this case. All further statutory references will be to that edition of Article 101.

2. Montgomery County Code (1984, as amended), § 33–43(e) defines service-connected disability retirement as follows:

"(e) *Service-connected disability retirement.* A member may be retired on a service-connected disability retirement if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate result of an accident occurring, or an occupational disease incurred or condition aggravated while in the actual performance of duty; that the incapacity is not due to willful negligence, and the incapacity is likely to be permanent. In extenuating circumstances, the administrator may waive the requirement that a member's incapacity is likely to be permanent and may approve a temporary disability retirement for one (1) or more one-year periods until the incapacity is either removed or it becomes apparent that it is likely to be permanent.

(2) The member is unable to perform the duties of the occupational classification to which assigned at the time disability occurred or a position of comparable status within the same department, if qualified."

When Montgomery County began paying disability retirement benefits to Fikar, it claimed a setoff pursuant to Md. Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 101, § 33(d),[3] and it terminated Fikar's workers' compensation benefits. Fikar challenged the propriety of the claimed setoff, and on October 21, 1991, the Workers' Compensation Commission ordered the County to pay compensation for vocational rehabilitation benefits in the amount of $350.00 per week plus medical bills and $.25 per mile for mileage for medical appointments.

Montgomery County sought judicial review of the Commission's order in the Circuit Court for Montgomery County. That court granted summary judgment for the County, reversing the Commission and holding that as a matter of law, § 33(d) operated to setoff Fikar's disability retirement payments against her vocational rehabilitation benefits. Fikar noted an appeal to the Court of Special Appeals, and on our own motion we issued a writ of certiorari prior to consideration of the case by the intermediate appellate court to determine whether vocational rehabilitation benefits are subject to the setoff of § 33(d), 331 Md. 284, 627 A.2d 1063. We shall affirm the Circuit Court for Montgomery County.

## II

Article 101, § 33(d) provides in part:

"(d) Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under

---

**3.** The parties and the circuit court refer to the offset provision as § 33(c). In a 1989 amendment, however, the General Assembly amended § 33 and renumbered its subsections. The offset provision became § 33(d). Ch. 559 of the Acts of 1989. This amendment became effective July 1, 1989, approximately six weeks before Fikar's accident, and is therefore applicable in this case.

§ 21(a)(2) [4] of this article ... the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article...."

Md.Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 101, § 33(d).

 In construing statutes, we consistently return to our familiar principles of construction:

" 'Again and again, we have said that the cardinal rule of statutory construction is to ascertain and effectuate the legislative intention. While the language of the statute is the primary source for determining legislative intent, the plain meaning rule is not absolute. Rather, the statute is to be construed reasonably with reference to the purpose, aim, or policies of the Legislature reflected in the statute. Words in the statute must, therefore, be read in a way that advances the legislative policy involved.' "

*Stapleford v. Hyatt,* 330 Md. 388, 400, 624 A.2d 526, 531 (1993) (quoting *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990) (citations omitted)). We have also said that "where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is

---

4. Md.Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.) Art. 101, § 21(a)(2) subjects the following employers to coverage of the workers' compensation laws:

"The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this article."

different from its plain meaning." *Potter v. Bethesda Fire Dep't,* 309 Md. 347, 353, 524 A.2d 61, 63–64 (1987) (quoting *State v. Fabritz,* 276 Md. 416, 421–22, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976) (citations omitted)). In *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987), we recognized that "[s]ometimes the language in question will be so clearly consistent with apparent purpose (and not productive of any absurd result) that further research will be unnecessary." *Id.* at 515, 525 A.2d at 633. Such is the case with Article 101, § 33.

■ Although we have not yet considered the particular issue before us today, we have examined Article 101, § 33 on several prior occasions, and we have found the legislative intent to be "luminously clear." *Potter, supra,* 309 Md. at 355, 524 A.2d at 65. "Upon reading section 33 the scheme that unmistakably emerges is that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Frank v. Baltimore County,* 284 Md. 655, 659, 399 A.2d 250, 253 (1979). *See also City of Baltimore v. Oros,* 301 Md. 460, 470, 483 A.2d 748, 753 (1984); *Feissner v. Prince George's County,* 282 Md. 413, 421, 384 A.2d 742, 747 (1978); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 363, 369 A.2d 82, 88 (1977); *Nooe v. City of Baltimore,* 28 Md.App. 348, 349–53, 345 A.2d 134, 135–37 (1975), *cert. denied,* 276 Md. 748 (1976).

■ In order for the statutory offset of § 33(d) to come into play, however, the benefits received under the pension plan and as workers' compensation must be "similar." *Newman v. Subsequent Injury Fund,* 311 Md. 721, 537 A.2d 274 (1988). In *Newman,* we looked to the fundamental nature of the claimant's retirement benefits and her workers' compensation benefits to determine whether they were in fact similar. In finding that they were not, we reasoned:

> "Newman was awarded workmen's compensation because of the impairment of the industrial use of her body as a result of her work-related injury. On the other hand, it

appears that she was entitled to the benefits under the retirement plan merely because she had elected to retire after attaining a prescribed age and 20 years service with the county. The payment of these benefits had no relation whatsoever to her injury and the disability resulting therefrom. Age and length of service were not a prerequisite for her entitlement to workmen's compensation benefits; anatomical disability was not a prerequisite for her entitlement to the retirement benefits. In short, her retirement payments were an age and length of service benefit; her workmen's compensation award was a disability benefit. The two benefits were not similar and not comparable. Therefore, the offset provisions of § 33(c) were not applicable."

*Newman,* 311 Md. at 724, 537 A.2d at 275. Thus, while ordinary retirement benefits may not trigger the offset, it is well settled that *disability* pension benefits are "similar" to workers' compensation payments and will trigger the offset, even if the disability pension benefits result from a contributory pension plan, *Frank v. Baltimore County, supra,* 284 Md. at 660, 399 A.2d at 254, and even when the workers' compensation benefits and the disability retirement benefits are not traceable to the same governmental employer. *Tsottles v. City of Baltimore,* 55 Md.App. 58, 63, 460 A.2d 636, 638 (1983). Fikar readily concedes that her disability pension benefits would trigger an offset of any future disability payments she may receive under the workers' compensation scheme, as both categories of benefits are intended to compensate her for her loss of earning capacity. At the same time, she asserts that because vocational rehabilitation benefits are intended to return the beneficiary to the workplace, they are not similar to disability retirement benefits within the meaning of § 33(d). Thus, she argues, under *Newman,* the offset provisions of § 33(d) should not apply to her.

Following the reasoning we applied in *Newman,* we will examine Fikar's disability retirement benefits and her vocational rehabilitation benefits to determine whether they are "similar" within the meaning of § 33(d). Fikar contends that

the vocational rehabilitation benefits she receives differ from disability payments both in form and in substance. She urges us to disregard the fact that both her vocational rehabilitation benefits and her disability retirement benefits arose out of the same, single injury, and to focus instead on the general purpose of each of the types of benefits. She asserts that disability retirement benefits are "lost wage" benefits, intended to compensate a worker for her loss of earning capacity. Vocational rehabilitation benefits, on the other hand, are intended to "rehabilitate" an injured worker and return her to the work force, according to Fikar. Fikar is correct about the overall objective of vocational rehabilitation, but she has failed to recognize the composite nature of the vocational rehabilitation benefits in the workers' compensation scheme.

The applicable law concerning vocational rehabilitation benefits in the workers' compensation scheme is set forth in Article 101, § 36(8). That section defines "vocational rehabilitation services" to include:

"A. Coordination of medical services;
B. Vocational assessment;
C. Vocational evaluation;
D. Vocational counseling;
E. Vocational rehabilitation plan development;
F. Vocational rehabilitation plan monitoring;
G. Vocational rehabilitation training;
H. Job development; and
I. Job placement."

Art. 101, § 36(8)(a)(i)(2). Subpart (e) of that section prescribes a cash payment for recipients of vocational rehabilitation services:

"(e) An employee receiving vocational rehabilitation services is entitled to compensation as if temporarily totally disabled."

Art. 101, § 36(8)(e).

Fikar's characterization of vocational rehabilitation benefits as an indivisible entity fails to recognize that "vocational

rehabilitation benefits" have two distinct components: in addition to the vocational services provided under subpart (a), a recipient of vocational rehabilitation benefits receives a cash payment under subpart (e). The two components are different in nature, and they must be considered independently. Those services which are outlined in subpart (a)—assessment, counseling, job placement, etc.—do indeed differ from disability retirement payments, both in form and in substance. These professional services, provided directly to the beneficiary, are clearly intended to prepare the beneficiary to return to the workplace. The cash payment under subpart (e), on the other hand, is quite similar to disability retirement benefits. Like temporary total disability payments and disability retirement payments, the cash component of vocational rehabilitation payments arises from an injury which occurred in the course of employment. *See* Art. 101, § 36(8)(c)(i); Montgomery County Code (1984, as amended), § 33–43(e). Like disability payments, the cash component of vocational rehabilitation is intended to be a partial substitute wage while the beneficiary is recovering or retraining. *See* Richard P. Gilbert, et al., *Maryland Workers' Compensation Handbook*, § 9.0–4.6, at 196, § 9.3, at 204 (2d ed. 1993). The cash payment prescribed by subpart (e) is so similar to disability payments, in fact, that the beneficiary receives that cash "as if [she were] temporarily totally disabled." It is luminously clear from the structure of the statute that the cash payment component of vocational rehabilitation is distinct from the provision of vocational services such as evaluations, job training, etc. As such, the cash payment is subject to the same offset that would apply if a beneficiary was receiving temporary total disability payments. The plain language of the statute is such that we can reach no other conclusion.

In the case *sub judice*, Fikar receives two-thirds of her prior salary in disability retirement pursuant to Montgomery County Code § 33–43(h)(1). She is entitled to these benefits because of injuries sustained in an accident which occurred in the course of her employment. She is also provided vocational rehabilitation services, and she receives two-thirds of her prior

salary "as if [she were] temporarily totally disabled" pursuant to Article 101, § 36(8)(e).[5] She is entitled to these benefits because of the same injuries sustained in the same accident which occurred in the course of her employment. In keeping with the legislature's intention to provide "only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation," *Frank, supra,* 284 Md. at 659, 399 A.2d at 253, the two distinct elements of Fikar's vocational rehabilitation benefits must be considered independently. The actual vocational rehabilitation services that are provided to Fikar under § 36(8)(a) are not similar to disability pension benefits, and § 33(d) does not relieve the County of its obligation to provide whatever other, non-cash vocational rehabilitation services Fikar may be entitled to receive under the workers' compensation law. Because the cash payment component of Fikar's vocational rehabilitation benefits prescribed by § 36(8)(e) is similar to her disability pension benefits, however, Montgomery County is entitled to offset the cash payment portion of Fikar's workers' compensation vocational rehabilitation benefits against her disability retirement under Article 101, § 33(d).

### *JUDGMENT AFFIRMED, WITH COSTS.*

---

**5.** We note that under her theory, Fikar receives payments equal to four-thirds of her prior salary—approximately 33 percent more than she received while she was working—from the County. We do not believe that the Legislature intended to allow such a windfall.