*Patrick Spevak v. Montgomery County, Maryland*, No. 44, September Term, 2021. Opinion by Getty, C.J.

**WORKERS' COMPENSATION — SERVICE-CONNECTED TOTAL DISABILITY RETIREMENT BENEFITS — "SIMILAR BENEFITS"**

The Court of Appeals held that permanent partial disability benefits and service-connected total disability retirement benefits are "similar benefits" under Md. Code (1991, 2016 Repl. Vol., 2021 Supp.), Labor and Employment Article § 9-610, that are subject to the offset provision.

Circuit Court for Montgomery County
Case No. 434813V
Argued: March 7, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 44

September Term, 2021

---

PATRICK SPEVAK

v.

MONTGOMERY COUNTY, MARYLAND

---

*Getty, C.J.
Watts,
Hotten,
Booth,
Biran,
Adkins, Sally D.,
   (Senior Judge, Specially Assigned)
McDonald, Robert N.,
   (Senior Judge, Specially Assigned)

JJ.

---

Opinion by Getty, C.J.
Watts, J., dissents.

---

Filed: August 15, 2022

*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to Md. Const., Art. IV, § 3A, he also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

Patrick Spevak, Petitioner, served as a firefighter in Montgomery County, Maryland from 1979 until 2010. In 2007, Mr. Spevak experienced a service-related back injury, which ultimately led to his retirement in 2010. Upon retirement, Mr. Spevak began collecting service-connected total disability retirement benefits. Several years after Mr. Spevak retired, he developed a compensable degree of occupational hearing loss related to his employment. Mr. Spevak filed for workers' compensation benefits, and the Workers' Compensation Commission (the "Commission") found that Mr. Spevak's hearing loss entitled him to $322.00 payable weekly for a certain number of weeks. Although Mr. Spevak was awarded compensation for his hearing loss, the Commission determined that the entirety be offset under Md. Code (1991, 2016 Repl. Vol., 2021 Supp.), Labor and Employment Article ("LE") § 9-610. The Circuit Court for Montgomery County affirmed the Commission's use of the offset provision and granted the cross-motion for summary judgment of the Respondent, Montgomery County (the "County"). The Court of Special Appeals affirmed the circuit court.

In this case, we consider whether the Court of Special Appeals erred in affirming the circuit court's grant of summary judgment. Precisely, we consider whether Mr. Spevak's service-connected total disability retirement benefits are "similar" to his permanent partial disability workers' compensation benefits. For the reasons explained below, we affirm the Court of Special Appeals.

## BACKGROUND

Mr. Spevak served as a firefighter in Montgomery County, Maryland from 1979 until 2010 when he retired due to a service-related back injury that occurred in 2007. Upon

his 2010 retirement, Mr. Spevak began collecting $1,859.07 per week in service-connected total disability retirement benefits. Several years after his retirement, Mr. Spevak developed hearing loss related to his employment from "exposure to loud noises, such as fire engines, sirens, and alarms." In light of his hearing loss, Mr. Spevak filed a workers' compensation claim on June 24, 2016. A hearing occurred on March 1, 2017, and the Commission issued an order on March 28, 2017 finding that Mr. Spevak's employment as a firefighter caused his hearing loss. The order instructed the County to reimburse Mr. Spevak for the cost of his hearing aids.

On April 3, 2017, Mr. Spevak filed issues with the Commission to determine the nature and extent of his hearing loss. In a hearing held on June 16, 2017, the County argued that Mr. Spevak's compensation for his hearing loss should be offset because Mr. Spevak received service-connected total disability retirement benefits due to his back injury, which compensated him for wage loss. On July 13, 2017, the Commission issued an order finding that Mr. Spevak suffered "21% loss of use of the left ear/hearing loss (26.25 weeks) and 0% loss of use of both ears (tinnitus) (0 weeks); at the rate of $322.00, payable weekly . . . for a period of 26.25 weeks." The Commission also found that the full amount awarded for Mr. Spevak's hearing loss was offset because his "weekly retirement benefits exceed [the] permanent partial disability rate."

Mr. Spevak filed a petition for judicial review in the Circuit Court for Montgomery County on August 1, 2017. Three days later, this Court published its opinion in *Reger v. Washington County Board of Education*, which interpreted the offset provision contained in LE § 9-610. 455 Md. 68 (2017). On November 22, 2017, Mr. Spevak filed a motion to

2

remand to the Commission. A hearing before the Commission occurred on May 1, 2019 to consider (1) whether Mr. Spevak's hearing loss compensation is subject to an offset, and (2) whether the Subsequent Injury Fund[1] should be a party to the case. In an order issued on May 3, 2019, the Commission determined that it lacked jurisdiction to reconsider the offset and dismissed the Subsequent Injury Fund as a party due to a lack of evidence showing liability.

On February 26, 2020, Mr. Spevak filed a motion to reinstate his appeal. Over the County's objection, Mr. Spevak's appeal was reinstated on April 29, 2020. On May 5, 2020, Mr. Spevak filed a motion for summary judgment arguing that the Commission erred in offsetting Mr. Spevak's hearing loss compensation. The County opposed the motion and filed a cross-motion for summary judgment, which the circuit court granted on October 14, 2020. Mr. Spevak appealed to the Court of Special Appeals.

The Court of Special Appeals affirmed the circuit court's grant of summary judgment. *Spevak v. Montgomery Cty.*, 251 Md. App. 674, 707 (2021). The intermediate

---

[1] Clifford B. Sobin, a legal commentator on Maryland Workers' Compensation law, described the Subsequent Injury Fund as follows:

> Frequently, employees who already have a permanent impairment suffer a subsequent work-related injury that results in a second permanent disability. Many times the employee's combined disability is substantially greater than it would have been from the subsequent injury alone. The employer is only liable for the compensation payable for the subsequent injury. To make up the difference in certain circumstances, the Legislature created the Subsequent Injury Fund and provided for additional compensation to be paid by that Fund if specified conditions were met.

Clifford B. Sobin, *Maryland Workers' Compensation*, § 1:13 at 11 (2021–2022 ed.) (footnotes omitted).

appellate court reasoned that Mr. Spevak's "service-connected total disability retirement compensates for any and all work-related injuries he sustained in his employment with Montgomery County" and therefore precluded him from "receiv[ing] a permanent partial workers' compensation award." *Id.* Mr. Spevak petitioned for a writ of *certiorari*, which we granted on November 10, 2021. *Spevak v. Montgomery Cty.*, 476 Md. 417 (2021).

In this case, we consider whether the Court of Special Appeals erred in affirming the circuit court and the Commission regarding the applicability of the offset provision in LE § 9-610. For the reasons explained below, we affirm the Court of Special Appeals.

## STANDARD OF REVIEW

When reviewing decisions of an administrative agency, this Court does not review the decisions of the circuit court or the Court of Special Appeals. *Broadway Servs., Inc. v. Comptroller*, 478 Md. 200, 214 (2022). In an appeal of a Commission decision, this Court shall determine whether the Commission "(1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia; (2) exceeded the powers granted to it under this title; or (3) misconstrued the law and facts applicable in the case decided." LE § 9-745(c). Generally, decisions of the Commission are "presumed to be *prima facie* correct[.]" LE § 9-745(b)(1). The presumption of correctness does not extend to questions of law, which this Court independently reviews. *Reger*, 455 Md. at 95 (citing *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655 (2016)).

A court shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f).

4

This Court reviews whether a court correctly granted a motion for summary judgment *de novo*. *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 482 (2017) (citations omitted). In reviewing a grant of summary judgment, we independently review the record in the light most favorable to the nonmoving party and "determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Castruccio v. Estate of Castruccio*, 456 Md. 1, 16 (2017) (citations omitted).

## DISCUSSION

### A. *An Overview of Workers' Compensation*

During the 1910s, states across the nation began adopting workers' compensation statutes in response to "(1) increases in dangerous employment; (2) public awareness of the problems associated with workplace accidents; (3) employers' concerns about a liability climate unfavorable to them; and (4) a more than doubling of the number of workers[] in labor unions." Clifford B. Sobin, *Maryland Workers' Compensation*, § 1:1 at 2 (2021–2022 ed.). By 1930, most states enacted workers' compensation legislation. *Id.* The General Assembly enacted Maryland's Workers' Compensation Act in 1914. 1914 Md. Laws, ch. 800.

In the original enactment of the Workers' Compensation Act, local government employees received unique treatment. *Blevins v. Baltimore Cty.*, 352 Md. 620, 635 (1999). Initially, local government employees were not "entitled to the benefits" of the Workers' Compensation Act if a "State law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Act is made for municipal employees

5

injured in the course of employment[.]" 1914 Md. Laws, ch. 800. In 1971, the General Assembly enacted an amended Workers' Compensation Act, which provided, "whether as part of a pension system or otherwise, any benefit or benefits are furnished [to the] employees of employers[,] . . . the benefit or benefits when furnished by the employer shall satisfy and discharge . . . the liability or obligation of the employer[.]" 1971 Md. Laws, ch. 785. The statute continued to provide that "[s]hould any benefits so furnished be less than those provided for in this Article[,] the employer shall be liable to furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required" under the Workers' Compensation Act. *Id.*; *See* Sobin, § 1:9 at 9–10 ("Whenever, as part of a governmental pension system, benefits are paid by the employer/insurer, those benefits (if they are equal to or greater than any payable workers' compensation benefits) satisfy the employer's obligation to pay workers' compensation benefits.") (footnote omitted).

The amount payable to an employee entitled to permanent disability benefits is determined by four factors: "(1) the year of the injury; (2) the average weekly wage of the claimant; (3) the portions of the body that are injured; and (4) the percentage of disability awarded." Sobin, § 13:1 at 366; *See* LE § 9-602 ("Average Weekly Wage"); LE § 9-603 ("State Average Weekly Wage"); LE § 9-604 ("Computation of Compensation"); LE §§ 9-614 *et seq.* ("Temporary Partial Disability"); LE §§ 9-618 *et seq.* ("Temporary Total Disability"); LE §§ 9-625 *et seq.* ("Permanent Partial Disability"); LE §§ 9-635 *et seq.* ("Permanent Total Disability"). The average weekly wage is relevant for permanent disability benefits because, depending on the benefits awarded, they are calculated as a

6

specific fraction of the average weekly wage not to exceed a specified fraction of the State average weekly wage.  LE §§ 9-629–9-630.

In Maryland, employees of governmental entities or quasi-public corporations are entitled to claim workers' compensation benefits and pension benefits simultaneously. When an employee collects workers' compensation benefits and pension benefits, the Workers' Compensation Act requires an analysis as to whether either benefit may be offset because the payment of the other benefit satisfies the employer's obligation.  LE § 9-610. Service-connected disability retirement benefits are "[d]isability benefits for injuries sustained as a result of the job."  Sobin, § 16:1 at 505.  Clifford B. Sobin, a legal commentator on Maryland Workers' Compensation law, identified two primary principles that guide the analysis: (1) "the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and [workers'] compensation" and (2) "[offsetting] of benefits resulting in a reduction of either compensation payments or pension payments only occurs when the benefits are similar." *Id.* at 506 (citing *Frank v. Baltimore Cty.*, 284 Md. 655, 659 (1979)); *Newman v. Subsequent Inj. Fund*, 311 Md. 721, 728 (1988).

**B.      *Parties' Contentions***

Mr. Spevak argues that the Court of Special Appeals did not apply the appropriate standard to determine if benefits are similar under LE § 9-610.  He asserts that prior caselaw from this Court identifies that the appropriate test to determine if benefits are similar is the "same injury" test.  Under the same injury test, Mr. Spevak argues that compensation for his hearing loss should not be offset because his back injury arose nine years before he

7

experienced a compensable degree of occupational hearing loss. Mr. Spevak asserts that the circuit court and Court of Special Appeals improperly invoked the wage loss theory,[2] which this Court has previously rejected in *Newman v. Subsequent Injury Fund*, 311 Md. at 727–28.

The County emphasizes that this case involves service-connected total disability retirement benefits. The County asserts that service-connected total disability retirement benefits compensate for all disabilities that occurred during the employment. Failing to apply the offset, from the County's perspective, results in duplicative recovery for the same loss. The County contends that if the offset does not apply, Mr. Spevak would collect more than the maximum compensation available in a workers' compensation case if he received permanent total disability benefits and more than his weekly wage at the time of his retirement.

---

[2] The wage loss theory stems from Arthur Larson's commentary in his work titled, The Law of Workmen's Compensation. He stated that

> [w]age-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of wage loss merely dictates the category of legislation applicable. Now if a [worker] undergoes a period of wage loss due to all three conditions, it does not follow that [the worker] should receive three sets of benefits simultaneously and thereby recover more than [the worker's] actual wage. [The worker] is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit.

4 Arthur Larson, The Law of Workmen's Compensation § 97.10 (1979). We disagree that the courts below invoked the wage loss theory. The basis for our holding is that Mr. Spevak's service-connected total disability retirement benefits and his permanent partial disability workers' compensation benefits are "similar benefits" under LE § 9-610.

## C.    *Statutory Interpretation*

Our chief objective when interpreting statutes "is to ascertain the General Assembly's purpose and intent when it enacted the statute." *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 510 (2021) (quoting *Berry v. Queen*, 469 Md. 674, 687 (2020)). We assume that the General Assembly's intent is "expressed in the statutory language" and therefore begin our analysis with the plain language of the statute. *Id.* (citations omitted). Reading the statute as a whole, we aim to "ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* Further, we avoid constructions that are illogical, unreasonable, or inconsistent with common sense. *United Bank v. Buckingham*, 472 Md. 407, 424 (2021).

We begin our plain language analysis by looking to LE § 9-610(a), which states in pertinent part:

> [I]f a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title . . . payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of *similar benefits* under this title.

(Emphasis added).

In *Newman*, this Court first interpreted the "similar benefits" language contained in LE § 9-610(a), then codified as Article 101, § 33(c). 311 Md. at 722. Article 101, § 33 "included a comparison between the employer-provided benefit and a 'similar benefit' required under the Workers' Compensation Act." *Reger*, 455 Md. at 105. We held that, although "similar benefit" appears at the end of the provision, "[i]t is perfectly clear that

9

the word 'similar' in the phrase 'the benefit furnished and the similar benefit required in this article,' near the end of the section, qualifies the provision at the beginning of the section as to the benefits furnished [to the] employees by employers." *Newman*, 311 Md. at 724.

Despite *Newman* being the first case where this Court interpreted "similar benefit" in the offset provision, prior decisions applying the offset provision reflect that "the tenor of [Article 101, § 33(c)] . . . is that the offsetting benefits be 'similar' ones." *Reger*, 455 Md. at 110; *Newman*, 311 Md. at 724. The *Newman* Court identified that "[u]pon reading [Article 101, § 33(c),] the scheme that unmistakably emerges is that the General Assembly wished to provide only *a single recovery for a single injury*[.]" *Newman*, 311 Md. at 725 (quoting *Frank*, 284 Md. at 659) (emphasis in original).

Since *Newman*, we have consistently identified that the same injury standard is the appropriate standard to determine whether benefits are similar under the offset provision. *See Blevins*, 352 Md. at 644 ("[I]t is evident that the General Assembly did not intend to make any substantive change to the law in deleting the word 'similar.' . . . The test for the set off under [LE] § 9-610 is the same as it was under [Article 101] § 33[.]"); *Fikar v. Montgomery Cty.*, 333 Md. 430, 438–39 (1994) (applying the single injury test to determine if the petitioner's vocational rehabilitation benefits are similar to the petitioner's disability pension benefits). Most recently, we confirmed the same injury standard in *Reger*, 455 Md. at 135.

In *Reger*, we stated that the General Assembly sought to provide "only a single recovery for a single injury for government employees covered by both a pension plan and

10

[workers'] compensation" and prevent employees from receiving a double recovery for the same injury. 455 Md. at 116–17 (quoting *Fikar*, 333 Md. at 435). Consistent with our prior interpretations and applications of LE § 9-610, we conclude that the same injury standard is the proper test to identify whether benefits are subject to an offset under LE § 9-610.

To confirm our reading of the plain language, it has been "the modern tendency of this Court . . . to continue the analysis of the statute beyond the plain meaning to examine" the "archival legislative history of relevant enactments." *In re: S.K.*, 466 Md. 31, 50 (2019) (citations omitted). This confirmatory process ensures that our "plain language interpretation of the statute is consistent with the legislature's intent." *Moore*, 476 Md. at 514 (citing *In re: S.K.*, 466 Md. at 50).

This Court's decision in *Reger* carefully describes the legislative history and intent behind the offset provision in detail. *Reger*, 455 Md. at 102–17; *Blevins*, 352 Md. at 635–41. The legislative history of the offset provision, now contained in LE § 9-610, clearly demonstrates the General Assembly's intent to prevent duplicative recovery. *See Newman*, 311 Md. at 728 (citing *Oros v. Mayor & City Council of Balt.*, 56 Md. App. 685, 693–94 (1983)). As described earlier, the first enactment of workers' compensation law occurred in 1914. The preamble acknowledged the "heavy burden" the State and taxpayers bear in providing "care and support for . . . injured [workers] and their dependents[.]" 1914 Md. Laws, ch. 800.

Aside from adding new categories of covered individuals, the original enactment remained unchanged until 1970 when "as part of a bill deleting the requirement that

11

employment be 'extra-hazardous' to be covered, the entire provision dealing with non-military State and local government personnel was repealed." *Blevins*, 352 Md. at 636; 1970 Md. Laws, ch. 741. In 1971, the General Assembly enacted a successor provision, which included the "similar benefit" language for the first time. *Reger*, 455 Md. at 105. In 1991, three years after this Court decided *Newman*, as part of Maryland's code revision,[3] the General Assembly repealed Article 101, and recodified it as Title 9 of the Labor and Employment Article. *Id.* at 113. The offset provision, recodified as LE § 9-610, "lacked the crucial 'similar benefit' language of its predecessor." *Id.* at 114.

This Court addressed the removal of the "similar benefit" language in *Blevins v. Baltimore County* and determined that "it is evident that the General Assembly did not intend to make any substantive change to the law in deleting the word 'similar.'" 352 Md. at 644. This Court reasoned that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Id.* at 642 (quoting *Duffy v. Conaway*, 295 Md. 242, 257 (1983)) (emphasis omitted). In determining whether the General Assembly intended to make a substantive change, this Court presumed that the

_____

[3] "As we have noted in the past, '[c]ode revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it.'" *United Bank*, 472 Md. at 427 n.6 (quoting *Nationwide Mut. Ins. Co. v. Shilling*, 468 Md. 239, 251 n.9 (2020)). "Maryland [c]ode [r]evision began in 1970 as a long-term project to create a modern comprehensive code when Governor Marvin Mandel appointed the Commission to Revise the Annotated Code. This formal revision of the statutory law for the General Assembly was coordinated by the Department of Legislative Services. Code [r]evision was completed in 2016 with the enactment by the General Assembly of the Alcoholic Beverages Article." *Id.* (quoting *Nationwide Mut. Ins. Co.*, 468 Md. at 251 n.9).

General Assembly was aware of the holding in *Newman* and therefore sought evidence of intent to substantively change the law. *Id.* The Revisor's Note and Report[4] accompanying the recodification did not provide a basis for this Court to hold that the General Assembly intended to substantively change LE § 9-610. *Id.* at 643–44.

"[I]n apparent response to our holding in *Blevins*," the General Assembly added "similar" into LE § 9-610 in 1999. *Reger*, 455 Md. at 116. The General Assembly stated its purpose was to "clarify[] that certain workers' compensation benefits should be offset only for a payment of certain disability retirement benefits[.]" *Id.*; 1999 Md. Laws, ch. 340.

We have consistently concluded that the General Assembly intended the offset provision in LE § 9-610 to preclude duplicative recovery for the same injury. In *Newman*, we stated that the General Assembly intended to "preclude double-dipping into the same pot of *comparable* benefits." *Newman*, 311 Md. at 728 (emphasis in original) (citation omitted). In *Reger*, we acknowledged that the intermediate appellate court in *Nooe v. Mayor & City Council of Baltimore* offered the perspective of Chief Judge Charles E. Orth, Jr. who identified the General Assembly's "concern as to 'governmental authorities being

---

[4] As we explained in *Blevins*, neither the Revisor's Note nor the Report indicated a legislative intent to alter the substantive meaning of LE § 9-610. 352 Md. at 644. The Report accompanying the code revision stated that the "basic thrust of the revision is formal; the primary purposes of the work are modernization and clarification, not policymaking." The Report also noted that "[e]very effort is made to ensure that a proposed revision conforms as nearly as possible to the intent of the General Assembly, and all [of] these revisions are highlighted in the appropriate [R]evisor's [N]otes." In *Blevins*, we identified that the Revisor's Note accompanying LE § 9-610 stated that "[t]his section is new language derived without substantive change[.]" *Id.* at 643.

13

obliged to pay benefits to an employee twice as a result of the same injury.'" *Reger*, 455 Md. at 102 (quoting *Nooe v. Mayor & City Council of Balt.*, 28 Md. App. 348, 352 (1975)); *See also Frank*, 284 Md. at 661 (rejecting Mr. Frank's argument because adopting the argument would "frustrate the legislature's intention to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees[]").

In addition to this Court's prior decisions ascertaining the General Assembly's intent, the General Assembly's 1999 amendment adding back the "similar" language, which was deleted during code revision, demonstrates that the General Assembly clearly sought to preclude duplicative recovery. After this Court's decision in *Blevins*, the General Assembly "clarif[ied] that certain workers' compensation benefits should be offset only for a payment of certain disability retirement benefits[.]" 1999 Md. Laws, ch. 340.

The preamble of the original 1914 enactment also provides helpful insight into the General Assembly's concerns. The preamble's acknowledgement of the "heavy burden" that taxpayers and the State are subjected to shows a concern about the financial burden that workers' compensation would place on the State and taxpayers. 1914 Md. Laws, ch. 800. This concern supports a conclusion that the General Assembly sought to preclude duplicative recovery for a single injury. The legislative history clearly shows that the General Assembly intended the offset provision to prevent duplicative recovery of similar benefits at the public's expense.

14

**D.** ***Mr. Spevak's permanent partial workers' compensation benefits are similar to his service-connected total disability retirement benefits, which compensate him for injuries related to his employment as a firefighter.***

Mr. Spevak's service-connected total disability retirement benefits compensate him for all service-related injuries. The structure of the pension plan and Workers' Compensation Act supports the conclusion that the workers' compensation award is subject to the offset under LE § 9-610 when a claimant's service-connected total disability retirement benefits exceed the workers' compensation benefits.

*1.* *The Structure of the Workers' Compensation Act and Pension Plans*

Section 33-43(f)(1)(A) of the Montgomery County Code states when an injured employee is eligible for service-connected disability retirement. Section 33-43(f)(1)(A) provides

> (1) A member may be retired on a service-connected disability retirement if:
>
> > (A) The member is totally or partially incapacitated as the natural and proximate result of an accident occurring, or an occupational disease incurred or condition aggravated while in the actual performance of duty[.]

Partial incapacity occurs when "a member's inability to perform one or more essential functions of the position the member holds because of impairment that: (1) is unlikely to resolve in the next 12 months; (2) may be permanent; and (3) does not prevent the member from performing any other substantial gainful activity." Montgomery County Code, § 33-43(b). Total incapacity occurs when "the member's inability to perform substantial gainful activity because of an impairment that: (1) is unlikely to resolve in the next 12 months; and (2) may be permanent." *Id.*

15

Under the Montgomery County Code, a person who receives service-connected total disability retirement benefits earns "an annual pension calculated under § 33-42(b)(1)[5]" except "the County must substitute final earnings for average final earnings" and "the pension must be at least 70% of the member's final earnings." Montgomery County Code, § 33-43(i)(1).

An employee suffers a total disability under the Workers' Compensation Act when the employee experiences an "incapacity to do work of any kind for which a reasonable market exists[.]" *Montgomery Cty. v. Buckman*, 333 Md. 516, 528 (1994). Workers' compensation benefits for employees who have a permanent total disability are calculated under LE § 9-637(a)(1). Section 9-637(a)(1) describes how to calculate payment to an employee who has a permanent total disability and states:

> Except as provided in paragraph (2) of this subsection, if a covered employee has a permanent total disability resulting from an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but may not:
>
> (i)      exceed the State average weekly wage; or
>
> (ii)     be less than $25.

The Maryland Department of Labor calculates the State average weekly wage pursuant to LE § 9-603 and reports the "State average weekly wage as of July 1 of that year" to the Commission. LE § 9-603. In 2017, employees who suffered a permanent total disability earned "[t]wo-thirds of the employee's Average Weekly Wage not to exceed

---

[5] Section 33-42(b)(1) explains the calculation for the "[a]mount of pension at normal retirement date" for "Optional Retirement Plan member[s]."

100% of the State Average Weekly Wage or $1,052.00." Workers' Compensation Commission, *Maryland Workers' Compensation Commission Maximum Rate of Benefits for Calendar Year 2017*, https://www.wcc.state.md.us/PDF/Rates/2017.pdf [https://perma.cc/JR8T-RLYG].

### 2. *The County's Cross-Motion for Summary Judgment*

The Court of Special Appeals correctly affirmed the circuit court's grant of the County's cross-motion for summary judgment. Neither Mr. Spevak nor the County dispute the underlying material facts of this case. Both parties agree that Mr. Spevak's back injury for which he receives service-connected total disability retirement benefits occurred before he experienced compensable hearing loss for which Mr. Spevak was awarded permanent partial workers' compensation benefits. The sole disagreement is whether Mr. Spevak's benefits are "similar benefits" under LE § 9-610, which is a question of law.

The County correctly asserts that the benefits are similar and therefore are subject to the offset. Mr. Spevak's service-connected total disability retirement benefits compensate him for all injuries related to his service as a firefighter. Under the Montgomery County Code, employees who are eligible for service-connected total disability retirement earn at least 70% of their final earnings. The computation is not altered based on the number of injuries an eligible employee sustains. It follows that receiving service-connected total disability benefits fully compensates the injured employee, and other service-connected benefits are duplicative under the workers' compensation system.

17

To illustrate this point, Mr. Spevak earns weekly service-connected total disability retirement benefits in the amount $1,859.07. If Mr. Spevak experienced hearing loss at the time he retired, his weekly compensation would have remained the same because his retirement benefits serve as compensation for the injuries sustained during the course of his employment. Therefore, simply because Mr. Spevak's hearing loss occurred after he began collecting service-connected total disability retirement benefits, Mr. Spevak cannot avoid the offset provision in LE § 9-610. This conclusion is consistent with the structure and application of the Workers' Compensation Act and the General Assembly's intent in enacting the offset provision. To hold that the offset provision does not apply would frustrate the General Assembly's purpose and intent in enacting the offset provision.

## CONCLUSION

For the foregoing reasons, we hold that Mr. Spevak's service-connected total disability retirement benefits arising from his back injury are similar to the permanent partial disability retirement benefits arising from his occupational hearing loss. In enacting the offset provision contained in LE § 9-610, the General Assembly sought to preclude employees from receiving duplicative recovery at the taxpayers' and State's expense. Service-connected total disability retirement benefits compensate the recipient for all injuries related to the recipient's service. Therefore, as a matter of law, Mr. Spevak's service-connected total disability retirement benefits are similar to his permanent partial disability benefits, and the benefits related to his occupational hearing loss are offset under LE § 9-610.

**JUDGMENT OF THE COURT OF**

18

**SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 44

September Term, 2021
_____

PATRICK SPEVAK

v.

MONTGOMERY COUNTY, MARYLAND
_____

*Getty, C.J.
Watts
Hotten
Booth
Biran
Adkins, Sally D. (Senior Judge,
Specially Assigned)
McDonald, Robert N. (Senior
Judge, Specially Assigned),

JJ.
_____

Dissenting Opinion by Watts, J.
_____

Filed: August 15, 2022

*Getty, C.J., now a Senior Judge, participated in
the hearing and conference of this case while an
active member of this Court. After being
recalled pursuant to Md. Const., Art. IV, § 3A,
he also participated in the decision and adoption
of this opinion.

Respectfully, I dissent. For more than three decades, we have consistently held that workers' compensation benefits for a covered government employee must be offset under Md. Code Ann., Lab. & Empl. (1991, 2016 Repl. Vol.) ("LE") § 9-610(a)(1) and earlier versions of the statute only where an employee is awarded two types of benefits for the same injury. In the watershed case of <u>Newman v. Subsequent Inj. Fund</u>, 311 Md. 721, 727, 537 A.2d 274, 277 (1988), we concluded that a substantively identical earlier version of LE § 9-610(a)(1) "focuse[d] only on dual recoveries for a single on-the-job injury[.]" Just five years ago, in <u>Reger v. Washington Cnty. Bd. of Educ.</u>, 455 Md. 68, 135, 166 A.3d 142, 181 (2017), we reaffirmed <u>Newman</u> and reiterated that the General Assembly intended for an offset of workers' compensation benefits under LE § 9-610(a)(1) to be made solely on "'comparable' benefits, which are 'benefits accruing by reason of the same injury.'" (Quoting <u>Newman</u>, 311 Md. at 727-28, 537 A.2d at 277) (emphasis omitted).

In this case, I would adhere to the "same injury" standard set forth historically in our case law and would hold that the workers' compensation benefits at issue need not be offset under LE § 9-610(a)(1) because the case involves benefits for two different injuries—namely, a back injury and hearing loss and tinnitus—rather than two types of benefits for the same injury.

This conclusion is required not only by our precedent, but also by the plain language and legislative history of LE § 9-610(a)(1). LE § 9-610(a)(1) provides:

> Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to

the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

In 1999, the General Assembly passed S.B. 314 (1999), through which it amended Md. Code Ann., Lab. & Empl. (1991, 1998 Supp.) ("LE (1998)") § 9-610(a)(1) by adding the word "similar" before the phrase "benefits under this title." 1999 Md. Laws 2392 (Vol. IV, Ch. 340, S.B. 314) (capitalization omitted). As a result, the statute reads as it does today, stating in pertinent part that, where a legal provision, "regardless of whether part of a pension system, provides a benefit to a covered employee . . . payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title." Id. (capitalization omitted).

The Fiscal Note of S.B. 314 (1999), accompanying the amendment, indicates that its sole purpose was to supersede the opinion that the Court of Special Appeals had issued the previous year in Wills v. Balt. Cnty., 120 Md. App. 281, 707 A.2d 108 (1998), rev'd sub nom. Blevins v. Balt. Cnty., 352 Md. 620, 724 A.2d 22 (1999). See S.B. 314 (1999) Fiscal Note at 2, available at https://mgaleg.maryland.gov/1999rs/fnotes/bil_0004/ sb0314.PDF [https://perma.cc/5FRA-99JA]. In Wills, 120 Md. App. at 302-03, 707 A.2d at 119, the Court of Special Appeals reasoned that, because the General Assembly omitted the word "similar" when it recodified Md. Code Ann., Art. 101, § 33 as Md. Code Ann., Lab. & Empl. (1991) § 9-610, the General Assembly must have intended to supersede our holding in Newman, which was based on the use of the word "similar" in the statute. We

disagreed and reversed.  See Blevins, 352 Md. at 631, 724 A.2d at 27.[1]

The 1999 addition of the word "similar" to LE (1998) § 9-610(a)(1) and the accompanying Fiscal Note make clear that the General Assembly, like this Court, disagreed with the Court of Special Appeals's reasoning in Wills.  The Fiscal Note pointed out that, before Wills, LE (1998) § 9-610(a)(1) "was understood to mean that a workers' compensation award to a government employee could not be offset by a normal service retirement of that employee."  S.B. 314 (1999) Fiscal Note at 2.  The Fiscal Note advised that, since Wills, "the Injured Workers' Insurance Fund[], which administers the State's Workers' Compensation Program, ha[d] taken an offset for workers' compensation benefits for State employees who also receive[d] a normal service retirement from the State Retirement and Pension System of Maryland[.]"  S.B. 314 (1999) Fiscal Note at 2.  The Fiscal Note observed that S.B. 314 (1999) would put an end to such offsets and would clarify that LE (1998) § 9-610(a)(1) meant that a covered government employee "is not entitled to receive benefits from both a pension plan and a workers' compensation award as a result of a single work-related injury."  Id. at 1-2.

---

[1]In Blevins, 352 Md. at 644, 724 A.2d at 33-34, we held:

> [T]he General Assembly did not intend to make any substantive change to the law in deleting the word 'similar.'  There is simply no basis for a conclusion that, despite the Revisor's Note and the Report, the Legislature, *sub silentio*, desired to deprive local government employees of a benefit they had so long enjoyed.  The Court of Special Appeals erred in deciding otherwise.

We concluded that "[t]he test for set off under § 9-610 is the same as it was under § 33, and, under that test, the county is not entitled to set off Ms. Wills's retirement benefits against her workers' compensation benefits."  Id. at 644, 724 A.2d at 34.

This legislative history demonstrates that the General Assembly agreed with our holding in Newman that workers' compensation benefits must be offset under LE § 9-610(a)(1) only where a covered government employee is awarded two types of benefits for the same injury. The General Assembly effectively codified Newman by superseding Wills, in which the Court of Special Appeals incorrectly determined that Newman was no longer good law. LE § 9-610(a)(1) has not been amended in the five years since we reaffirmed Newman in Reger in 2017. In fact, the General Assembly has not amended LE § 9-610(a)(1) since the 1999 amendment that, in effect, codified Newman. Consistent with the legislative history of LE § 9-610(a)(1), I would continue to apply to the "same injury" standard that this Court has utilized for decades.

As a result, I disagree with the Majority's holding "that Mr. Spevak's service-connected total disability retirement benefits arising from his back injury are similar to the permanent partial disability retirement benefits arising from his occupational hearing loss[,]" and that therefore his benefits are offset under LE § 9-610. Maj. Op. at 18. In so holding, the Majority acknowledges, as it must, that the benefits arise from different injuries—a back injury and hearing loss. The real crux of the majority opinion is its conclusion that "total disability retirement benefits compensate the recipient for all injuries related to the recipient's service." Maj. Op. at 18. In other words, the Majority concludes that the "same injury" standard does not apply where total disability retirement benefits are awarded and that where total disability retirement benefits are involved, an offset will inevitably be made regardless of whether an employee suffers separate and distinct injuries or the same injury. See Maj. Op. at 18.

- 4 -

I disagree with the determination that the "same injury" standard does not apply where, as here, an employee is awarded service-connected total disability retirement benefits, as opposed to service-connected partial disability retirement benefits, ordinary (that is, non-service-connected) disability retirement benefits, or retirement benefits based on age and length of service. Such a conclusion is precluded by cases involving service-connected disability retirement benefits in which we have applied or explained the "same injury" standard. In Blevins, 352 Md. at 622-23, 724 A.2d at 23, we held that workers' compensation benefits did not need to be offset under LE § 9-610(a)(1) where the employee was awarded those benefits after he was awarded service-connected disability retirement benefits. We concluded that it was of no consequence that the employee was awarded workers' compensation benefits after being awarded service-connected disability retirement benefits because the employee "would not be receiving a duplicate benefit for the same injury, as . . . [t]he workers' compensation benefits were awarded for a weekly period prior to his retirement, when he was not receiving and was not entitled to receive any offsetting retirement benefits." Id. at 627, 724 A.2d at 25.

In Fikar v. Montgomery Cnty., 333 Md. 430, 438-39, 635 A.2d 977, 981 (1994), we held where an employee was awarded disability pension benefits and workers' compensation benefits for vocational rehabilitation because of the "same injuries sustained in the same accident which occurred in the course of her employment[,]" the cash payment component of the vocational rehabilitation benefits was similar to the payment of disability pension benefits (because both payments compensated for the same injury) but the actual vocational rehabilitation services provided to the employee (job training, etc.) were not

similar to disability benefits and were not subject to offset. In determining that an offset was required for the rehabilitation cash payment component but not the rehabilitation services, we specifically explained that the employee was eligible for service-connected disability retirement benefits and workers' compensation benefits "because of the same injuries sustained in the same accident which occurred in the course of her employment." Id. at 439, 635 A.2d at 981. We observed that the General Assembly intended "to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation[.]" Id. at 439, 635 A.2d at 981 (cleaned up).

Our holdings in Blevins and Fikar demonstrate that the "same injury" standard applies to all cases involving LE § 9-610(a)(1), regardless of the type of retirement benefits, if any, the employee is awarded. If the "same injury" standard did not apply to cases involving service-connected disability retirement benefits, we would have had no reason to discuss the standard in Blevins or Fikar, let alone to apply it. In neither Blevins nor Fikar did we indicate that where an employee is awarded service-connected disability retirement benefits for total disability, that award compensates the employee for all service-related injuries regardless of whether the injuries are the same or not. Our holdings in Blevins and Fikar indicate just the opposite—that where disability retirement benefits and workers' compensation benefits are concerned, the same injury standard applies with respect to determining the need for an offset.

I disagree with the reasoning implicit in the majority opinion that Newman (which involved retirement benefits based on age and length of service) and Reger (which involved ordinary, not service-connected, disability retirement benefits) are distinguishable because

- 6 -

this case involves service-connected total disability retirement benefits, and <u>Reger</u> and <u>Newman</u> did not. <u>See</u> Maj. Op. at 13-14; <u>Newman</u>, 311 Md. at 724, 537 A.2d at 275; <u>Reger</u>, 455 Md. at 77, 166 A.3d at 147. In <u>Newman</u> and <u>Reger</u>, we did not indicate that the type of retirement benefits that the employee was awarded was dispositive, or material, in any way. To the contrary, we made clear that the only dispositive question was whether the employee had been awarded two types of benefits for the **same** injury. In <u>Newman</u>, 311 Md. at 728, 537 A.2d at 277, the answer was no, and we held that an offset was not required under a predecessor of LE § 9-610(a)(1) because when benefits are not traceable to the same injury, they are dissimilar, and the statutory offset does not apply. In <u>Reger</u>, 455 Md. at 78, 166 A.3d at 148, the answer was yes, and we held that an offset was required under LE § 9-610(a)(1) "[b]ecause both sets of benefits compensated [the employee] for the same injury[.]"

To be sure, in <u>Reger</u>, we referred in some instances to the circumstance that the employee was awarded ordinary disability retirement benefits, such as when we stated that one of the issues before us was whether, as a matter of law, ordinary disability retirement benefits could be similar to workers' compensation benefits. <u>See id.</u> at 93, 166 A.3d at 157. But, in <u>Reger</u>, we observed that the first question that needed to be answered was what the legislative intent was behind the term "similar benefits" in LE § 9-610(a)(1). <u>See id.</u> at 93, 166 A.3d at 157. We answered that question by reaffirming <u>Newman</u> and unequivocally stating that, "[w]hen benefits are not traceable to the same injury, they are dissimilar, and the statutory offset does not apply." <u>Reger</u>, 455 Md. at 117, 166 A.3d at 171 (citing <u>Newman</u>, 311 Md. at 728, 537 A.2d at 277). Our holding in <u>Reger</u> was

- 7 -

explicitly based on the circumstance that the employee received two types of benefits for the same injury. See Reger, 455 Md. at 78, 166 A.3d at 148. Reger provides no support for the theory that the type of retirement benefits awarded an employee is material to the issue of an offset, and our holding in Reger cannot be harmonized with the Majority's holding in this case.

The Majority's reasoning that service-connected total disability retirement benefits compensate an employee for all work-related injuries and "[t]herefore, as a matter of law, Mr. Spevak's service-connected total disability retirement benefits are similar to his permanent partial disability benefits" conflicts with our case law. Maj. Op. at 18. The Majority's conclusion is plainly inconsistent with Reger, in which we reaffirmed Newman and reiterated that "a benefit that compensates an employee for wage loss is not necessarily a 'similar benefit' subject to the statutory offset; the offset would not apply if the wage loss benefit was not awarded for the same injury as the workers' compensation benefit." Reger, 455 Md. at 135, 166 A.3d at 181-82 (citing Newman, 311 Md. at 727, 537 A.2d at 277).

Most importantly, as this case demonstrates, service-connected total disability retirement benefits are not always similar to workers' compensation benefits. Mr. Spevak, a former firefighter, suffered a back injury in the line of duty and was awarded service-connected total disability retirement benefits. Years after retiring, Mr. Spevak developed hearing loss and tinnitus, which were different conditions/injuries caused by his employment. Nonetheless, under the majority opinion, the workers' compensation benefits awarded to Mr. Spevak for his hearing loss will be completely offset by the service-connected total disability retirement benefits. The offset is improper and not authorized by

- 8 -

the statute or our case law because the two types of benefits are not at all similar, given that they arise from two different injuries involving two different parts of the body. Mr. Spevak's back injury has nothing to do with his hearing loss and tinnitus, and he should not be deprived of benefits for one injury because of benefits for the other. Such an outcome is inequitable, at odds with our case law, and inconsistent with the clear intent of the General Assembly for offsets to be required under LE § 9-610(a)(1) only where an employee is awarded two types of benefits for the same injury.

For the above reasons, respectfully, I dissent.