*Joseph Dennie v. Montgomery County, Maryland*, No. 993, Sept. Term, 2024, Opinion by Eyler, J. Filed March 2, 2026.

**WORKERS' COMPENSATION — LABOR & EMPLOYMENT ("LE") ART. § 9-610 — OFFSET FOR GOVERNMENT EMPLOYER PAYING BENEFITS THAT ARE SIMILAR TO WORKERS' COMPENSATION BENEFITS AWARDED EMPLOYEE — STATUTE IN EFFECT AT TIME OF DISABLEMENT, NOT SUBSEQUENTLY AMENDED STATUTE, APPLIES — DECISIONAL LAW INTERPRETING STATUTE APPLIES RETROACTIVELY TO INTERPRETATION BASED ON NEW FACTUAL SCENARIO — *SPEVAK V. MONTGOMERY COUNTY*, 480 MD. 562 (2022), AND *REGER V. WASHINGTON COUNTY BOARD OF EDUCATION*, 455 MD. 68 (2017) — PRINCIPLES SET OUT IN *SPEVAK* CONTROL BUT PRODUCE DIFFERENT RESULT FOR PARTIAL DISABILITY PENSION THAN FOR TOTAL DISABILITY PENSION.**

A county employee was granted a service-connected partial disability retirement benefit for specified injuries and diseases. Soon after retirement, he applied for workers' compensation benefits for the occupational disease of hearing loss, which was not one of those specified diseases and had not manifested itself until a later time. The Workers' Compensation Commission ("the Commission") determined that the hearing loss was an occupational disease and granted him permanent partial disability benefits. Under Md. Code, Labor and Employment Article ("LE") § 9-610, the employer sought an offset for its payment of service-connected partial disability retirement benefits against the workers' compensation benefits on the ground that the two benefits were "similar" within the meaning of that word in the statute. The employee argued that either the 2023 amendment to LE § 9-610 ("2023 Offset Law") requiring "similar benefits" to be for injury to the same body part, applied, or the legislature's own 2023 interpretation of the prior 1999 version of LE § 9-610 ("1999 Offset Law") applied, and that the benefits were not "similar." He also argued that the Supreme Court's interpretation of the 1999 Offset Law in *Spevak* did not apply because it was decided after his date of disablement. The employer argued that the 1999 Offset Law applied, as did *Spevak*, and it was entitled to the offset. The Commission denied the offset, and, in an action for judicial review, the circuit court reversed, ruling that the offset applied.

*Held*: Judgment reversed and case remanded with instructions. Under LE § 9-601, the law in effect at the time of the employee's disablement controls, so the 1999 Offset Law, not the 2023 Offset Law, applied. A Maryland appellate decision applying an existing interpretation of a statute to a new factual scenario applies retroactively to cases pending when the decision is made. In this case, therefore, the Supreme Court's 2022 interpretation of the 1999 Offset Law in *Spevak* applied retroactively. Despite commentary in uncodified sections of the 2023 Offset Law, the legal principles set forth in *Reger*, in 2017, and in *Spevak*, in 2022, are not different. Both recognize that the offset applies when the benefit

the government employer is paying is traceable to the same injury as the workers' compensation award.

In *Spevak*, the employee was granted a service-connected *total* disability benefit, which, pursuant to the Montgomery County Code, covers any and all injuries and occupational diseases the employee sustained as a result of his employment. Even though the occupational disease in *Spevak* (also hearing loss) did not manifest itself until after the employee retired, he had sustained it in the course of his employment. Thus, the total disability retirement benefit covered it, and the workers' compensation award covered it, resulting in "similar" benefits, which meant the offset applied. In this case, the employee was granted a service-connected *partial* disability benefit, which does not cover any and all injuries and occupational diseases the employee sustained as a result of his employment. Because the partial disability benefit did not cover the hearing loss and the workers' compensation benefit did, the benefits were not "similar," and the offset did not apply.

Circuit Court for Montgomery County
Case No.: C-15-CV-23-004121

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 993

September Term, 2024

_____

JOSEPH DENNIE

v.

MONTGOMERY COUNTY, MARYLAND

_____

Graeff,
Ripken,
Eyler, Deborah S.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, Deborah S., J.

_____

Filed: March 2, 2026

*Tang, Rosalyn, and Albright, Anne JJ. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

Montgomery County ("the County"), the appellee, pays service-connected partial disability retirement benefits to Joseph Dennie, the appellant. After he retired, Mr. Dennie was awarded workers' compensation benefits for the occupational disease of hearing loss, which was not one of the conditions on which his service-connected partial disability retirement was based. The primary issue in this appeal is whether, under Maryland Code § 9-610 of the Labor and Employment Article ("LE"), the County is entitled to offset the retirement benefits it pays Mr. Dennie against the workers' compensation benefits it was ordered to pay him. Underlying that issue are two questions: what version of LE § 9-610 applies, and does the Maryland Supreme Court's decision in *Spevak v. Montgomery County*, 480 Md. 562 (2022), control?

We conclude that, even though the workers' compensation award to Mr. Dennie was made after the effective date of an amendment to LE § 9-610, the pre-amendment statute applies, as does the interpretation of the pre-amendment statute in *Spevak*. We further conclude that, because Mr. Dennie's service-connected disability retirement benefit is for partial disability, under the reasoning in *Spevak*, which involved a service-connected total disability retirement benefit, the statutory offset does not apply. Accordingly, we shall reverse the judgment of the Circuit Court for Montgomery County and remand with instructions.

## FACTS AND PROCEEDINGS

For twenty-eight years, Mr. Dennie was employed by the County as a firefighter. In June 2018, he was granted a service-connected partial disability retirement due to a number

of specified conditions.[1] Mr. Dennie's date of disability for purposes of his retirement benefit was March 9, 2016.

On April 6, 2018, Mr. Dennie filed a claim with the Workers' Compensation Commission ("the Commission"), alleging that he had sustained the occupational disease of hearing loss due to his work as a firefighter.[2] After the County opposed the claim, a hearing was held on October 30, 2018. On November 5, 2018, the Commission issued an order finding that Mr. Dennie had sustained the occupational disease of hearing loss and that his date of disablement was April 5, 2018. The Commission ordered the County to pay

---

[1] A letter of June 25, 2018 from the Disability Manager of the Montgomery County Employee Retirement Plans documents that Mr. Dennie was granted a service-connected disability retirement "because of the following":

1. Right cervical radiculopathy, C6-7
2. Lumbar radiculopathy
3. Right ankle sprain, tibiofibular ligament, subsequent osteochondritis dissecans of the right ankle
4. Right knee pain, degenerative joint disease and patellar chondromalacia
5. Left ankle pain, not defined
6. Right shoulder pain with degenerative changes of subacromial bursa and impingement syndrome of supraspinatus tendon on right
7. Left shoulder pain with impingement syndrome of supraspinatus tendon on left
8. Hypertension
9. Hypercholesterolemia
10. Non-specific changes on EKG
11. Obstructive sleep apnea
12. Gastroesophageal reflux disorder
13. Atypical episodic chest pain may or may not be related to 12
14. Benign prostatic hypertrophy with obstruction
15. Isolated syncopal episode

[2] Mr. Dennie also submitted a claim for the occupational disease of tinnitus. That claim was settled with the County.

2

Mr. Dennie "causally related medical expenses" and determined that the case would be held for consideration of whether he had sustained permanent partial disability, to be set at his request.

On June 30, 2023, Mr. Dennie returned to the Commission seeking a monetary permanency award for his hearing loss. A hearing was held before the Commission on October 10, 2023. At that time, the County requested an offset of its liability for workers' compensation benefits to Mr. Dennie under LE § 9-610. Counsel for Mr. Dennie argued that the offset request was made too late and both counsel presented arguments as to whether the offset statute applied and, if so, its effect.

On October 19, 2023, the Commission issued an order granting permanent partial disability benefits for an "occupational disease sustained on April 5, 2018" "[r]esulting in 10.5% loss of use of the left ear hearing loss; at the rate of $365.00, payable weekly, beginning April 6, 2018, for a period of 13.125 weeks." That amount came to $4,790.62. On October 25, 2023, the October 19 order was withdrawn and replaced with an order that was identical except it added that the County's offset request was denied.

In an action for judicial review brought by the County, the circuit court overruled the Commission's decision with respect to the offset request. It determined that the County was entitled to the offset based on its payment of the service-connected partial disability retirement benefits to Mr. Dennie. Because Mr. Dennie's retirement benefits exceeded his workers' compensation award, the offset reduced the County's liability for the workers' compensation benefits to zero. This appeal followed.

Mr. Dennie poses three questions that can be reduced to whether the County properly raised the offset issue below and, if so, whether the circuit court erred in ruling that the County was entitled to the offset.[3]

## DISCUSSION

### Standard of Review

In an action for judicial review, we review the Commission's decision, not the decision of the circuit court. *Montgomery Cnty. v. Cochran*, 471 Md. 186, 208 (2020). A reviewing court "has the authority to consider only the issues that were raised and decided

---

[3] Mr. Dennie's questions presented are:

I. Did the circuit court err in finding that an offset applies to benefits from different injuries and conditions to completely different parts of the body, contrary to LE § 9-610's meaning, given that the General Assembly explicitly stated in 2023 that it had always meant that where two sets of benefits arise from two distinct and unrelated injuries to different body parts (orthopedic for pension and hearing loss for workers' compensation) those benefits are not "similar" and LE § 9-610's offset does not apply?

II. Did the Circuit Court err in by holding *Spevak v. Montgomery County* was controlling case law and thereby reversing the Commission's decision to grant workers' compensation benefits to Firefighter Dennie for his hearing loss, which was unrelated to his disability retirement benefits, in light of the legal principle that the law in effect on the date of disablement governs – particularly given the General Assembly's explicit abrogation of *Spevak* (2022) and confirmation that LE § 9-610 should be interpreted consistent with *Reger* (2017), which controlled at the time of Firefighter Dennie's disablement (2018)?

III. Did the circuit court err in considering Montgomery County's argument, presented for the first time on appeal, given that our appellate courts have continually stated that Maryland law limits judicial review to only issues raised and encompassed in the Commission's decision?

before the Commission." *Temp. Staffing, Inc. v. J.J. Haines & Co., Inc.*, 362 Md. 388, 404-05 (2001). A reviewing court "considers and passes only on matters covered by the issues raised and decided below or on relevant matters to which there was evidence before the Commission." *Pressman v. State Accident Fund*, 246 Md. 406, 415 (1967).

The standard of review in cases such as this one, where there is an on-the-record appeal from the Commission, is as follows:

> When reviewing workers' compensation awards in cases where the claimant sought review on the record (rather than a de novo review involving a new evidentiary hearing), we look through the decision of the circuit court and evaluate the Commission's decision directly. *W.R. Grace & Co. v. Swedo*, 439 Md. 441, 452-53 (2014). Our task is "to determine whether the Commission: (1) justly considered all of the facts about the occupational disease; (2) exceeded the powers granted to it under [the Workers' Compensation Act]; or (3) misconstrued the law and facts applicable in the case decided." LE § 9-745(c). "The court must confirm the decision unless it determines that the Commission exceeded its authority or misconstrued the law or facts." *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 13 (2018) (citing *Uninsured Empl'rs' Fund v. Pennel*, 133 Md. App. 279, 288-89 (2000)).

*Montgomery Cnty. v. Rios*, 244 Md. App. 629, 633 (2020) (cleaned up) (quoting *Montgomery Cnty. v. Cochran*, 243 Md. App. 102, 112 (2019), *aff'd in part and rev'd in part on other grounds*, 471 Md. 186 (2020)).

In an appeal from a workers' compensation ruling where the issue presented is one of law, "'we review the decision *de novo*, without deference to the decisions of either the Commission or the circuit court.'" *Zakwieia v. Baltimore Cnty. Bd. of Educ.*, 231 Md. App. 644, 648 (2017) (quoting *Long v. Injured Workers' Ins. Fund*, 225 Md. App. 48, 57 (2015)). However, the Commission's interpretation of the Act is entitled to "'some deference . . .

5

unless its conclusions are based upon an erroneous conclusion of law.'" *Cochran*, 471 Md. at 208 (quoting *Elec. Gen. Corp. v. LaBonte*, 454 Md. 113, 131 (2017)).

<u>**The Law Pertaining to the Offset**</u>

In *Reger v. Washington County Board of Education*, 455 Md. 68 (2017), the Supreme Court gave a detailed history of the offset provision we are concerned with in this case. Since the inception of the Maryland Workers' Compensation Act ("the Act") in 1914, it has included a provision that, in some circumstances, allows a government employer to offset benefits it is paying an employee (or retired employee) against its liability for workers' compensation benefits. Originally, the Act only applied to government employers when their employees were engaged in extra hazardous work. An offset provision stated that, in that situation, when a State or local law provided a benefit that was equal to or better than that provided by the Act, the employee would not be entitled to benefits under the Act. *Id.* at 102.

In 1971, the General Assembly did away with the extra hazardous work qualification for public workers but enacted a provision that offset their workers' compensation benefits "dollar-for-dollar" "against the benefits otherwise furnished by a public employer[.]" *Id.* at 105 (cleaned up). That offset statute has been in existence ever since with some changes along the way. The two most recent versions of the statute are relevant here.

In 1999, the General Assembly passed Senate Bill 314 codified at LE § 9-610(a)(1) ("the 1999 Offset Law"), which states:

> Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation or policy, regardless of whether part of a pension system, provides a benefit to

> a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the subsequent injury fund for payment of similar benefits under this title.[4]

Stripped of language that does not apply to this case, and put in common parlance, the 1999 Offset Law means that, by paying retirement benefits to Mr. Dennie, the County's liability to pay him "similar benefits" for workers' compensation is satisfied. "Similar benefits" is the operative and central language.

The 1999 Offset Law remained in effect until October 1, 2023. Before examining the 2023 change to that law, we shall discuss two Maryland Supreme Court cases interpreting the 1999 Offset Law and, in particular, what is meant by "similar benefits" in the context of a former employee receiving retirement benefits from a governmental employer.

In *Reger*, decided in 2017, Mr. Reger was employed as a school custodian by the Washington County Board of Education ("the Board"). While on the job, a cafeteria table fell on him as he was moving it, causing him to sustain "significant injuries, primarily to his back and neck, and [rendering him] unable to perform his custodial work." *Reger*, 455 Md. at 77. Because of his injuries, he sought an accidental disability retirement but was awarded an ordinary disability retirement. He also filed a claim for temporary total disability benefits with the Commission, based on the same injuries. The Board asked the Commission to offset Mr. Reger's ordinary disability retirement benefits against his

---

[4] The "similar benefits" language first was included in the 1971 statute. *Reger*, 455 Md. at 105.

temporary total disability benefits, pursuant to the 1999 Offset Law. The Commission agreed that the offset applied. Dissatisfied, Mr. Reger petitioned for judicial review in the Circuit Court for Washington County. The parties filed cross-motions for summary judgment, and, after a hearing, the court ruled "that '[a]s a matter of law in this case, the benefits are indeed within the statute similar and therefore the statutory offset applies.'" *Id*. at 78.

On appeal, we affirmed the judgment of the circuit court in an unreported opinion. The Supreme Court granted a writ of certiorari to consider whether the Commission correctly applied the 1999 Offset Law.

The Court began by ascertaining the legislature's intent in enacting the statutory offset provision, "in particular the intent behind the 'similar benefits' language." *Id.* at 101. It commented in reviewing the legislative history of the Act that:

> [F]rom the time of the adoption of the Act, it has been "the policy of the General Assembly, as expressed in its legislative enactments, that an employee of the government shall not receive workmen's compensation benefits in addition to other benefits furnished by the employer accruing by reason of an accidental injury arising out of and in the course of employment."

*Id*. at 102 (quoting *Nooe v. City of Baltimore*, 28 Md. App. 348, 349 (1975), *cert. denied*, 276 Md. 748 (1976)). After discussing cases that had examined that history and the "similar benefits" language, the Court explained:

> We distill the following three principles from the above-described legislative history of LE § 9-610, and the cases that have applied and clarified the statutory offset provision. First, the overall legislative intent behind the offset provision now contained in LE § 9-610 was "that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and [workers']

8

compensation," and to thereby prevent employees from receiving a double recovery for the same injury. *Fikar* [*v. Montgomery Cnty.*], 333 Md. [430,] 435 [(1994)] (quoting *Frank* [*v. Baltimore Cnty.*], 284 Md. [655,] 659 [(1979)].

Second, as clarified in *Newman* [*v. Subsequent Inj. Fund*, 311 Md. 721 (1988)], the specific language in the statute that "payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer . . . for payment of **similar benefits** under this title" reflects a legislative intent that the offset apply only to "comparable" benefits, which are "**benefits accruing by reason of the same injury.**" 311 Md. at 727 (emphasis added). *See also Fikar*, 333 Md. at 439 (holding that the statutory offset applied because cash payments the petitioner was paid as part of her vocational rehabilitation benefits were awarded "because of the same injuries sustained in the same accident which occurred in the course of her employment" that was also the basis for her disability pension benefits); *Polomski* [*v. Mayor & City Council of Baltimore*], 344 Md. [70,] 81 [(1996)] (holding that "similar benefits for the same injury trigger the offset provision of Art. 101, § 33(d) [later recodified at LE § 9-610]" whereas "[d]issimilar benefits [ ] render the offset provision inapplicable"); *Blevins* [*v. Baltimore Cnty.*], 352 Md. [620,] 642 [(1999)] (noting that pursuant to our holding in *Newman*, "the only benefits that a county was entitled to set off against a workers' compensation award were those that were similar to the compensation benefits – those which, if not set off, would permit a double recovery for the same injury"). When benefits are not traceable to the same injury, they are dissimilar, and the statutory offset does not apply. *Newman*, 311 Md. at 728.

Third, although early cases discussing the statutory offset provision suggested it should apply to offset workers' compensation benefits against any other benefit that compensates the employee for wage loss, this Court explicitly rejected that rationale in *Newman*, emphasizing that "our statute focuses only on dual recoveries for a single on-the-job injury" and "does not encompass setoffs for every type of wage-loss benefit available." *Id.* at 727.

*Id.* at 116-17 (emphasis in original).

The Court applied the principles it had distilled to evaluate Mr. Reger's contention that, as a matter of law, workers' compensation benefits awarded against a governmental employer never can be offset by ordinary disability retirement benefits because the latter

9

are not work-related. To address that issue, "the only relevant inquiry is whether ordinary disability benefits can, as a matter of law, be 'similar' to workers' compensation benefits – meaning that the two sets of benefits were awarded as a recovery for the same injury or, in other words, stemmed from the same cause." *Id.* at 118. The Court acknowledged its well-established holdings that

> the plain meaning of LE § 9-610 was to prevent a double recovery for the same injury by applying an offset to **any** benefit that is "similar" to [a] workers' compensation benefit also received by the employee, *i.e.*, when both sets of benefits were awarded to compensate the employee for the same injury.

*Id.* at 119 (emphasis in original). The Court examined the eligibility criteria for ordinary disability retirement benefits and for temporary total disability benefits and determined that, in fact, an ordinary disability retirement benefit may be received for a work-related injury:

> As ordinary disability benefits may be awarded for **any** mental or physical injury that renders the employee unable to perform the normal duties of his position, those benefits certainly could be awarded on the basis of the same workplace accidental injury or occupational disease that would support an award of workers' compensation benefits. Therefore, we hold that if the record reflects that the cause of the incapacity for which ordinary disability retirement benefits were awarded was the same workplace accidental injury or occupational disease that was the basis for a workers' compensation award, the two sets of benefits are "similar" and the offset in LE § 9-610 applies.
>
> Our holding is consistent with the statutory purpose of the offset provision to prevent a double recovery for the same injury.

*Id.* at 121. Thus, Mr. Reger "was paid both ordinary disability benefits and temporary total disability benefits as compensation for the same back and neck injuries." *Id*. at 132. Both benefits having been awarded for the same injuries, the ordinary disability retirement

10

benefits were "similar benefits" to the temporary total disability benefits, and the statutory offset applied.

In 2022, the Maryland Supreme Court once again addressed the 1999 Offset Law in *Spevak*, 480 Md. 562, a case arising in a context different than *Reger* but with several factual similarities to the one at bar. In 2007, Mr. Spevak injured his back in the course of performing his job as a Montgomery County firefighter. In 2010, he retired on a service-connected total disability retirement benefit. Several years later, he began experiencing occupational hearing loss that was caused by his employment as a firefighter and filed a claim with the Commission. The Commission granted him permanent partial disability benefits upon a finding that he had sustained a "21% loss of use of the left ear/hearing loss[.]" *Id*. at 566 (quotation marks omitted). His benefits were payable at a weekly rate of $322.00 for 26.25 weeks. The Commission determined that, under the 1999 Offset Law, the County's liability for that award was offset by its payment of the service-connected total disability retirement benefits. In an action for judicial review, the Circuit Court for Montgomery County affirmed. This Court affirmed as well. *Spevak v. Montgomery Cnty.*, 251 Md. App. 674, 707 (2021).

The Supreme Court of Maryland took the case to decide whether Mr. Spevak's service-connected total disability retirement benefits were "similar" to his permanent partial disability workers' compensation benefits under the 1999 Offset Law. Mr. Spevak argued that, whether the benefits were "similar" was to be determined by the "same injury" test, and because his injuries were not to the same body part, the benefits were not similar. The County argued that, because Mr. Spevak's service-connected total disability retirement

11

benefits compensated him for all disabilities sustained during his employment, there would be a double recovery for the same loss if the offset were not applied.

In affirming, the Supreme Court reiterated that the "same injury" test is the correct one to apply in assessing whether benefits are "similar" under the 1999 Offset Law and that the General Assembly intended that the offset would "preclude duplicative recovery for the same injury" so as to minimize the burden to taxpayers and the government. *Spevak*, 480 Md. at 576. The Court read the pertinent provisions of the Montgomery County Code to mean that a service-connected total disability retirement benefit compensates the retiree "for *all injuries* related to his [or her] service as a firefighter." *Id*. at 579 (emphasis added). Even though Mr. Spevak's hearing loss did not manifest itself until after he retired, the hearing loss was an occupational disease arising out of and in the course of his employment. (Otherwise, the Act would not apply at all.) Accordingly, the hearing loss was a service-related disease for which the service-connected total disability retirement benefit compensated him. As Mr. Spevak's retirement pension covered his disease of hearing loss and the workers' compensation award compensated him for the same disease, the benefits were similar and the offset applied.

In the next legislative session, the General Assembly passed Senate Bill 377, which amended LE § 9-610(a)(1), effective October 1, 2023 ("the 2023 Offset Law"). The bill added to the existing language of the 1999 Offset Law as follows:

> Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to

12

the dependents of the covered employee, payment of the benefit by the employer satisfies to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title **only if the payment of the benefit by the employer and the payment for benefits under this title are based, in whole or in part, on the same body part.**

(New language in bold.) The bill included several uncodified sections, among them:

> SECTION 2. AND BE IT FURTHER ENACTED, That it is the intent of the General Assembly that this Act abrogate the holding by the Supreme Court of Maryland in Spevak v. Montgomery County, 480 Md. 562 (2022).

and

> SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall be applied in a manner that is consistent with the holding by the Supreme Court of Maryland in Reger v. Washington County Board of Education, 455 Md. 68 (2017).

The Fiscal and Policy Note for SB 377 repeats the language of those two uncodified sections and, after quoting from *Spevak* and *Reger*, states: "The [Supreme Court's] decision in the *Spevak* case overturned the decision in the *Reger* case by applying a broader interpretation of 'similar' benefits." SB 377, Fiscal and Policy Note, at 3. The note describes the *Spevak* holding as "interpret[ing] 'similar' to apply to *all* service-related injuries, regardless of whether the benefits were awarded for the same or different injuries." *Id*. (emphasis in original).

## The Offset Issue Is Properly Before This Court

On October 10, 2023, at the Commission hearing on the nature and extent of Mr. Dennie's disability from his hearing loss, the County first raised the offset issue, asking that the offset be applied to his award. It did not file a form raising that issue before the hearing. Mr. Dennie's lawyer objected because "[n]o issues had been filed[,]" and he had

13

"no idea of this, and this is completely new."[5] The Commissioner responded, "[l]et's hear what [counsel for the County] has to say." The Commissioner did not make any express ruling on the objection. Both sides made arguments to the Commissioner about whether the 1999 Offset Law applied. The Commissioner did not give an oral ruling or statement of opinion.

In its October 19, 2023 order, the Commission found that Mr. Dennie was entitled to permanent partial disability "[r]esulting in 10.5% loss of use of the left ear hearing loss; at the rate of $365.00, payable weekly, beginning April 6, 2018, for a period of 13.125 weeks." Shortly thereafter, the Commission rescinded that order and issued a revised order with the same determination and an additional paragraph that reads: "3. LE 9-610 OFFSET: Denied."

In its petition for judicial review in the circuit court, the County did not raise the offset issue. It filed an amended petition, however, in which it argued that it was entitled to an offset under the 1999 Offset Law. Mr. Dennie responded to that issue in his filing, and the hearing before the circuit court was devoted entirely to the offset issue. As noted, the court agreed with the County that it was entitled to the offset.

On appeal, Mr. Dennie contends the County failed to preserve the offset issue for review in the circuit court because it did not timely raise it before the Commission, and because the offset issue was not included in its original petition for judicial review. The

---

[5] *See* COMAR 14.09.03.02B ("After the claim has commenced, any party may raise an issue by filing an issues form, available on the Commission website.").

County responds that the issue was adequately raised and actually decided below, and, therefore, is preserved for review.

The Commission implicitly denied Mr. Dennie's objection to the offset issue being raised before the Commission by hearing argument on the issue and ruling on it in its final order. The circuit court considered and decided the issue as well. The issue was subject to comprehensive arguments of counsel before the Commission and before the circuit court.

Rule 8-131(a) provides that

[o]rdinarily, an appellate court will not decide any [non-jurisdictional] issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

The record reveals that the offset issue was raised before the Commission and decided by it, and then was raised before the circuit court and decided by it. The issue is preserved for review on appeal.

**Contentions on the Merits of the Offset Issue**

The parties agree that the 2023 Offset Law does not apply retroactively. Somewhat contradictorily, Mr. Dennie maintains that *Spevak* does not apply to the 1999 Offset Law because the General Assembly expressly abrogated it in the uncodified sections of the 2023 Offset Law, which shows that the General Assembly never intended the 1999 Offset Law to mean what the *Spevak* Court said it means. He also argues that *Spevak* does not apply because, under LE § 9-601, discussed below, the law in effect on his date of disablement, April 5, 2018, controls and *Spevak* was not decided until 2022. He maintains that *Reger*, decided in 2017 and approved by the legislature in the uncodified sections of the 2023

15

Offset Law, controls, and under that case, the offset does not apply because the injuries for which he was receiving service-connected disability retirement benefits were different from the hearing loss for which he was awarded workers' compensation benefits. Therefore, the benefits were not "similar."

The County maintains that no portion of the 2023 Offset Law, codified or uncodified, applies retroactively, and the General Assembly did not "abrogate" *Spevak*. Rather, it added new language to LE § 9-610 that applies going forward. The County agrees that, under LE § 9-601, the law in effect at the time of disablement applies. It maintains that that means the 1999 Offset Law governs and that, under *Polakoff v. Turner*, 385 Md. 467 (2005), *affirming*, 155 Md. App. 60 (2004), *Spevak* applies. Moreover, *Spevak* specifically addresses the circumstances in which Montgomery County service-connected disability retirement benefits are similar to workers' compensation benefits, which is the situation here. *Reger*, on the other hand, addressed whether ordinary disability benefits are similar to workers' compensation benefits, which is a different issue. The County asserts that, under *Spevak*, the offset applies.

### The 2023 Offset Law, Including its Uncodified Sections, Does Not Apply To This Case

LE § 9-601, entitled "Construction of subtitle," states:

A provision of this subtitle may not be construed to change:

(1) a law relating to an accidental personal injury or an occupational disease, that occurred before the effective date of the provision and for which a claim is made under this title; or

(2) the payment basis in effect when an accidental personal injury or an occupational disease, for which a claim is made under this title, occurred.

16

In *Baltimore County v. Fleming*, 113 Md. App. 254, 258 (1996), we held that, by enacting LE § 9-601, "the General Assembly has fixed the compensation rate as of the time of the accidental injury or occupational disease, and *it is the statute in effect at the time of injury or disease that governs.*" (Emphasis added.) We noted that "the effect of § 9-601 is essentially to freeze the entitlement to benefits as of the date of injury." *Id.*

*Fleming* involved a firefighter employed by Baltimore County who suffered an accidental injury to his right shoulder in 1984. He began receiving workers' compensation benefits in 1986. In 1991 and again in 1995, when his shoulder worsened, he was awarded permanent partial disability benefits. In the meantime, two things happened. First, in 1991, the General Assembly changed the language of the offset law then in effect to remove the word "similar" from the phrase "similar benefits."[6] Second, in 1995, the claimant took a length-of-service retirement, for which he received benefits from Baltimore County. When, later in 1995, the claimant sought additional workers' compensation benefits based on worsening of his shoulder condition, Baltimore County sought an offset under the version of LE § 9-610 that went into effect in 1991. The County took the position that, without the word "similar" in the offset statute, it was entitled to offset the retirement benefits it was paying against the workers' compensation benefits the claimant was receiving.

---

[6] The word "similar" was added back into the statutory language in 1999. The Supreme Court had held in *Blevins v. Baltimore Cnty.*, 352 Md. 620 (1999), that, even without the word "similar," the offset only applied if the workers' compensation and government benefits were similar.

17

Before this Court, the parties focused their arguments on whether the 1991 amendment to LE § 9-610 applied retroactively to the workers' compensation benefits the claimant was receiving based on his 1984 date of injury. We held that there was no reason to address the issue of retroactivity because, under LE § 9-601, the controlling law for purposes of determining the claimant's benefits, including whether any offset applied, was the law in effect in 1984, his date of injury.

When a worker experiences an occupational disease, there is no particular date of injury. The operative date, which is considered the equivalent of the date of injury, is the date of disablement. *Waters v. Pleasant Manor Nursing Home*, 361 Md. 82, 98 (2000). The reasoning in *Fleming* applies to the case at bar. Mr. Dennie's April 5, 2018 date of disablement for his hearing loss is the operative event, and under LE § 9-601, the law in effect on that date determines his entitlement to benefits. Accordingly, the 1999 Offset Law, not the 2023 Offset Law (both the codified and uncodified sections) controls.[7]

---

[7] A statutory retroactivity analysis would not favor Mr. Dennie's position in any event. In *Johnson v. Mayor and City Council of Baltimore*, 430 Md. 368 (2013), brought by the widow of a Baltimore City firefighter, the Supreme Court held that an amendment adding dependents to the scope of LE § 9-503(e), a different offset provision of the Act, did not apply retroactively. It summarized as follows the relevant factors for deciding whether an enactment applies retroactively:

> (1) Statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

(continued…)

18

## The Supreme Court's Interpretation of the 1999 Offset Law In *Spevak* Is Controlling Decisional Law

Mr. Dennie asserts that, because he filed his workers' compensation claim in 2018 and *Spevak* was not decided until 2022, the Supreme Court's interpretation of LE § 9-610 in *Spevak* does not apply to his case. Rather, *Reger*, which was decided the year before he filed his claim, applies. In other words, the *Spevak* decision has no retroactive effect. This argument assumes that the outcome of this appeal hinges on whether *Reger* applies and *Spevak* does not, which we do not agree with, as we shall explain *infra*; but we will address his argument as if which case applies would make a difference.

Whether a statute applies retroactively is not the same question as whether a decision of a Maryland appellate court interpreting a statute applies retroactively. *Polakoff*, 385 Md. 467, a lead paint case, addressed this issue. In 1994, the Supreme Court held in *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 673-74 (1994), that, to make out a cause of action for negligence against a landlord based on exposure to lead paint, a plaintiff had to offer proof that the landlord knew or had reason to know of the presence of loose, flaking, or peeling paint at the leased premises. In 2003, in *Brooks v. Lewin Realty III, Inc*., 378 Md. 70 (2003), the Court overruled several of its prior decisions, including *Richwind*, and held

*Id*. at 381-82 (cleaned up).

The 2023 Offset Law states that it has an effective date of October 1, 2023, which ordinarily is the operative date from which the statute applies; it is not procedural or remedial in nature; there is no legislative history showing an intent for the amendment to apply retroactively; and the amendment appears to have narrowed the application of the offset, which could the expand the class of beneficiaries and impair vested rights. All of these factors militate strongly against the 2023 Offset Law having retroactive effect.

19

that, in a lead paint poisoning suit arising in Baltimore City based on negligence for violating the Baltimore City Housing Code, a plaintiff could make out a prima facie case without proof of notice on the part of the landlord. The *Brooks* decision turned on the Court's interpretation of the operative provisions of the Baltimore City Housing Code.

The plaintiff in *Polakoff*, a mother on behalf of her minor child, filed suit in 1995 against, among others, the landlord of the Baltimore City apartment in which the child had lived from birth to age four. She alleged that the child had been poisoned by lead paint in that apartment. Due to various procedural twists and turns, the case did not go to trial until October of 2002. The jury returned a plaintiff's verdict and awarded substantial damages. The defendants noted an appeal.

While the appeal was pending in this Court, the Supreme Court issued its decision in *Brooks*. One of the issues on appeal became whether *Richwind* or *Brooks* controlled. Specifically, the issue was whether *Brooks* applied retroactively to cases pending when it was decided, which would mean the plaintiff made out a prima facie case regardless of whether she put on evidence of notice, or whether *Brooks* applied prospectively, in which case *Richwind* would dictate that notice had to be proven. This Court explained "that when a judicial decision applies a rule of law that existed both before and after that decision, but applies it to a new factual situation in that particular case, the decision applies to the facts that produced the decision and to all pending cases." *Polakoff v. Turner*, 155 Md. App. 60, 66 (2004). The Supreme Court affirmed, agreeing that *Brooks* applied retroactively to the case. It explained: "[T]he general rule in Maryland is that a new interpretation of a statute

applies to the case before the court and to all cases pending where the issue has been preserved for appellate review." *Polakoff*, 385 Md. at 488.

For decades, the Maryland appellate courts have rendered decisions about whether benefits are "similar" within the meaning of the 1999 Offset Law and the statutory provisions that preceded it. The following are some examples. In *Newman*, 311 Md. 721, the Supreme Court held that a length-of-service retirement benefit, having no relation to accidental injury or disability, cannot be the "same benefit" as a workers' compensation award, and therefore the offset did not apply. In *Mayor and City Council of Baltimore v. Oros,* 301 Md. 460 (1984), two police officers who were injured on the job were awarded temporary total disability benefits by the Commission, and subsequently were awarded permanent partial disability benefits. During the period in which they received temporary total disability benefits, they also were paid in full by the police department under the sick leave terms of their collective bargaining agreement. The Supreme Court held that the temporary total benefits and the sick leave benefits were similar, and therefore, the City of Baltimore was entitled to the offset, but the permanent partial benefits and the sick leave benefits were not similar, so the City could not apply an excess paid for sick leave as an offset against the permanent partial benefits. And in *Fikar*, 333 Md. 430, where a correctional officer sustained an on-the-job back injury for which she was awarded vocational rehabilitation benefits by the Commission, the County was entitled to offset the service-connected disability retirement pension it was paying her against the cash payment portion of the vocational rehabilitation award, as it was "similar" to the pension, but could

21

not offset the pension against the professional services part of the award, which was not "similar."

As these cases illustrate, there are a myriad of factual variables in the offset cases, to include the nature and timing of the injury or injuries, the type of governmental benefit conferred, the meaning of the local law creating the benefit, and the type of workers' compensation benefit awarded, just as examples. The cases that come up on appeal often present unique factual scenarios. *Spevak* teed up, for the first time, the question whether a service-connected *total* disability retirement benefit under the Montgomery County Code was similar to a workers' compensation benefit for the occupational disease of hearing loss when the hearing loss was sustained in the course of employment but did not manifest itself until after retirement. The Court's analysis of that question was an application of the 1999 Offset Law to a new factual scenario, not a declaration of a new principle of law. Therefore, the holding in *Spevak* – that because that particular total disability retirement benefit compensated the retiree for *all* injuries and diseases caused by the employment, the retirement benefit covered the hearing loss that the workers' compensation award covered – applies retroactively to cases pending when it was decided, including the case at bar.

The Court's prior decision in *Reger* does not change that. The factual scenario there involved an ordinary disability retirement benefit for the same injury as a workers' compensation benefit, and the question was whether those two benefits ever could be similar. That was not the issue decided in *Spevak* and is not the issue here.

Mr. Dennie urges that, even though the 2023 Offset Law does not apply retroactively, in determining the legislative intent underlying the 1999 Offset Law, we should take into

account the uncodified sections of the 2023 Offset Law because they make clear that the General Assembly disagrees with *Spevak*. Generally, the appellate cases in Maryland "make clear that a subsequent amendment or legislative construction of a statute is not controlling as to the meaning of the prior law." *Am. Recovery Co., Inc. v. Dep't of Health & Mental Hygiene*, 306 Md. 12, 18 (1986). "[N]evertheless, subsequent legislation can be considered helpful to determine [the] legislative intent [of the prior statute]." *Chesek v. Jones*, 406 Md. 446, 462 (2008). In analyzing the effect of the holding in *Spevak* on the case at bar, if any, we will keep in mind what we believe the 2023 Offset Law reveals about the legislative intent underlying the 1999 Offset Law. We do so notwithstanding that, as we shall explain, the thumbnail analyses of *Reger* and *Spevak* in the uncodified sections of the 2023 Offset Law and its Fiscal and Policy Note are based on the misconception that *Spevak* overruled *Reger*.

**Applying the Principles Underlying *Spevak*, Mr. Dennie's Workers' Compensation Award is not Offset By His Partial Disability Retirement Benefit Payments**

The Montgomery County Code ("Code"), Part II, Article III creates the "Employee's Retirement System" ("ERS") for County employees and certain officials. Section 33-43 covers disability retirements, of which service-connected disability retirements are a subset. A member of the ERS may be retired on a service-connected disability pension if, among other qualifications, the member (1) "is totally or partially incapacitated as the natural and proximate result of an accident occurring, or an occupational disease incurred or condition aggravated while in the actual performance of duty"; (2) "the incapacity is not due to the member's willful negligence" and "is likely to be permanent"; and (3) the

23

member cannot perform the duties of the classification to which he or she was assigned or a comparable position in the same department for which he or she is qualified. Code § 33-43(f)(1)(A)-(D). Pensions for service-connected disability retirements are based on a member's final earnings, which usually means the member's regular earnings as of the last date of active service. *See* Code § 33-35.

The Code provides definitions that distinguish "total incapacity" and "partial incapacity." Total incapacity means the member is unable "to perform substantial gainful activity" due to an impairment that "is unlikely to resolve in the next 12 months" and "may be permanent." Code § 33-43(b). By contrast, partial incapacity means the member cannot "perform one or more essential functions of the position the member holds because of impairment that: (1) is unlikely to resolve in the next 12 months; (2) may be permanent; and (3) does not prevent the member from performing other substantial gainful activity. *Id*. "Substantial gainful activity" means "a level of productive work that requires significant physical or mental duties, or a combination of both, performed for pay or profit on a full-time or part-time basis." *Id*.[8] Not surprisingly, the annual pension for a totally incapacitated member is significantly higher than that for a partially incapacitated member. For a service-connected *total* disability retirement, the pension must be at a minimum 70% of the member's final earnings. Code § 33-43(i)(1)(B). By contrast, the annual pension for a

---

[8] The definition goes on to say that "[a]n individual is able to perform a substantial level of work if the individual is able to earn more than the U.S. Social Security Administration's current monthly earnings limit for a disabled person." Code § 33-43(b). Also, "[t]he County must give the term substantial gainful activity the same meaning as the term is given by the U.S. Social Security Administration." *Id.*

service-connected *partial* disability retirement must be at least 52.5% of the member's final earnings. Code, § 33-43(i)(4).

The Supreme Court's decisions in *Spevak* and *Reger* implemented the same principle: that for the LE § 9-610 offset to apply, the workers' compensation benefits and the government benefits must be traceable to the same injury or disease, so that, if not for a set off, the employee would receive a double recovery. They did so in two different factual situations, however. In *Reger*, the employee injured two body parts at the same time and was awarded workers' compensation benefits for both; and he also retired on an ordinary disability benefit. On review by the Supreme Court, the question was whether that retirement benefit, which can be granted for a non-work-related injury or disease, ever can be "similar" to a workers' compensation benefit for a work-related injury. The Court concluded that, notwithstanding that ordinary disability benefits can be granted for non-work-related conditions, it also can be granted for work-related injuries, which is what had happened. In that situation, the two benefits were similar, and the offset applied. Without the offset, Mr. Reger would have been receiving two benefits for the same injuries.

As we see it, the holding in *Spevak* did not overrule the holding in *Reger* and indeed was not contrary to or inconsistent with it. At an identifiable time, Mr. Spevak injured his back at work and at another unidentifiable time, he developed the occupational disease of hearing loss that was caused by his work but did not manifest itself until after he had retired. He received workers' compensation benefits for both, at two different times. Unlike the issue in *Reger*, in *Spevak* there was no question that the government benefit Mr. Spevak was receiving – a service-connected total disability retirement – related to injuries suffered

25

and diseases contracted on the job. The question was whether that retirement benefit covered *only* his back injury or covered his back injury *and* his later-manifesting occupational disease of hearing loss. If it covered both, the workers' compensation benefits and the retirement benefits were duplicative, and the offset would apply. If it only covered the back injury, then the benefits were not to the same body parts and, therefore, were not duplicative, and the offset would not apply.

The *Spevak* Court read the Code to mean that a service-connected *total* disability benefit covers all the retirees' work-related injuries and diseases – even those that were not known prior to retirement but manifested themselves after retirement. Therefore, the total disability retirement benefit Mr. Spevak was receiving from the County covered the occupational disease of hearing loss, which was contracted on the job but manifested itself later. Because the total disability benefit covered all work-related injuries and diseases, it covered Mr. Spevak's back injury and his occupational disease of hearing loss. His workers' compensation benefits also covered the back injury and the hearing loss. The benefits were similar, and the offset applied.

Exactly how the new language in the 2023 Offset Law will be interpreted and applied in a future case based on the same factual scenario as *Spevak* must await another day. The case before us is governed by the 1999 Offset Law and differs from *Spevak* factually in a way that is material to the outcome. Unlike Mr. Spevak, Mr. Dennie sustained many injuries and occupational diseases that happened or manifested themselves prior to his retirement. Like Mr. Spevak, he also contracted the occupational disease of hearing loss during his employment that did not manifest itself until after his date of disablement and

26

for which he was awarded workers' compensation benefits. Unlike Mr. Spevak, he did not retire on a service-connected *total* disability retirement. He received a service-connected *partial* disability retirement benefit, which only can be awarded to an employee who is not found to be totally incapacitated, *see* Code § 33-43(i)(4)(B), and was granted based on specified injuries and diseases, as delineated in the document supplied by the ERS. *See infra*, n.1. The occupational disease of hearing loss was not one of them. Therefore, unlike in *Spevak*, it cannot be said in this case that the retirement benefit Mr. Dennie was receiving covered the occupational disease for which workers' compensation benefits were awarded. In other words, the workers' compensation benefits are traceable to the disease of hearing loss and the retirement benefits are not. As the injuries are not the same, the benefits are not the same, and the offset does not apply.

For all these reasons, we shall reverse the judgment of the circuit court with instructions to enter a judgment affirming the October 25, 2023 order of the Commission and remanding the matter to it for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**

27